# EXHIBIT 48

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| STATE OF NEW JERSEY, et al., <br><br> Plaintiffs, <br><br> v. <br><br> U.S. OFFICE OF MANAGEMENT AND BUDGET, et al., <br><br> Defendants. | C.A. No. 1:25-cv-11816 |

## DECLARATION OF DIRECTOR BRIAN M. DANIELS

I, Brian M. Daniels, declare under the penalty of perjury pursuant to 28 U.S.C. § 1746 that the following is true and correct:

1. I am the Director of the Office of Management and Budget within the Rhode Island Department of Administration. I am over the age of 18 and have personal knowledge of all the facts stated herein, including knowledge based on my experience and information provided to me. If called as a witness, I could and would testify competently to the matters set forth below.

2. I have broad responsibility for many aspects of administration throughout Rhode Island state government, including generally overseeing and supporting the development and administration of Rhode Island state agency budgets, including funds from federal financial assistance.

3. I submit this Declaration in support of the States' Motion for Summary Judgment relating to the clause stating that federal agencies may terminate grants "pursuant to the terms and conditions of the Federal award, including, to the extent authorized by law, if an award no

longer effectuates the program goals or agency priorities" in 2 C.F.R. § 200.340(a)(4) (2024) and its predecessor, 2 C.F.R. § 200.340(a)(2) (2021) (jointly referred to as the "Clause").

4. The termination of the grants described below have and/or would have severe impacts on Rhode Island across multiple critical sectors. The State would face significant challenges in digital equity initiatives, losing NTIA funding that supports broadband access and adoption in underserved communities, particularly affecting rural areas and low-income households. The unemployment insurance system, which supported workers during COVID-19, would lose critical ARPA modernization funding, potentially reverting to outdated systems that struggle with processing claims efficiently.

5. Environmental justice communities would also be particularly hard hit, as termination of the Environmental Justice Government-to-Government programs would eliminate funding for climate resilience projects and community-driven environmental initiatives that address pollution and health disparities in disadvantaged neighborhoods.

6. Rhode Island's workforce development ecosystem would also suffer major disruptions with the loss of QUEST, apprenticeship expansion, and senior employment programs, reducing job training opportunities and career pathways for vulnerable populations.

7. Additionally, Rhode Island's food security infrastructure will be weakened without the Local Food for Schools and Child Care programs, affecting both agricultural producers and nutrition programs for children.

8. The cumulative effect would be a significant reduction in the State's capacity to address inequality, modernize critical systems, and support economic recovery, disproportionately impacting low-income communities, seniors, and environmental justice populations who rely most heavily on these federally funded services and programs.

**Terminated Grants**

9. Rhode Island has had grants terminated pursuant to the Clause, including, but not limited to:

   a. On May 9, 2025, the Department of Commerce cited the Clause to terminate a $4,540,059.00 award to Rhode Island Commerce for the NTIA State Digital Equity Planning and Capacity grant (FAIN: 4431DS038), the purpose of which is to implement the Rhode Island digital equity plan developed pursuant to the state digital equity planning grant program. The defendant agency cited the Clause and terminated this grant because it "no longer effectuates the program goals or priorities." The termination of this grant has harmed Rhode Island as it required the State to terminate an employee; it also will harm Rhode Island as critical programming and digital literacy supports will not be able to be performed, leaving Rhode Islanders more vulnerable to cyberattacks and less able to leverage the internet for important things like job applications and adult learning, telemedicine, and online banking.

   b. On May 5, 2025, the Department of Commerce cited the Clause to terminate a $344,000.00 award to the Rhode Island Coastal Resources Management Council for the Coastal Zone Management Inflation Reduction Act Non-Competitive Awards grant (FAIN: NA24NOSX473C0024), the purpose of which is to build the ability of the state's federally-approved coastal management program within the Rhode Island Coastal Resources Management Council (CRMC) to implement projects, initiatives, and programs that increase the climate resilience of coastal communities within coastal counties, specifically to create a public shoreline

    access management plan that fosters shoreline public access that is resilient to the effects of climate change, particularly in underserved and environmental justice communities in Rhode Island, to ensure Rhode Islanders know their rights to coastal areas, understand the roles of and connections between their state and town governments, and feel more connected to the coast and more resilient to the impacts of climate change. The defendant agency cited the Clause and terminated this grant because it "no longer effectuates the program goals or agency priorities." The termination of this grant has harmed and will harm Rhode Island because (1) initial work has been completed under the first phase of this project to best realize the actual needs of Rhode Island's citizenry to gain safe, accessible, resilient, and continued available shoreline access in light of the effects of a changing climate; (2) the delivery of these access points to all citizens of the State have a continued focus on gaining safe, available, and accessible access to underserved communities; and (3) it had begun and would have provided the State with a management plan that it can carry out to effectuate these objectives.

c. On May 22, 2025, DOL cited the Clause to terminate a $2,282,164.00 award to the Rhode Island Department of Labor and Training (DLT) for the American Rescue Plan Act Unemployment Insurance (ARPA UI) Equity grant (FAIN: UI382432255A44), the purpose of which is to conduct activities that result in increased equity in access and, when eligible, UI benefit receipt. The defendant agency cited the Clause and terminated this grant because it "does not effectuate agency priorities." The termination of the grant will harm Rhode Island because

    we will lose funding in support of UI fraud unit staff, in addition to funding in support of strengthening claimant access to the UI program.

d. On May 22, 2025, DOL cited the Clause to terminate a $1,491,750.00 award to DLT for the American Rescue Plan Act Unemployment Insurance (ARPA UI) Tiger Team grant (FAIN: 23A60UB000091), the purpose of which is to help states implement negotiated recommendations in areas the state needs to address the three goals of ARPA: (1) prevent and detect fraudulent activity, and to recover funds from fraud, (2) promote equitable access, and (3) ensure timely payment of benefits and reduce backlogs. The defendant agency cited the Clause and terminated this grant because it "does not effectuate agency priorities." The termination of the grant will harm Rhode Island because we will lose funding in support of combatting UI fraud, in addition to funding in support of removing barriers to access for the UI program for Rhode Islanders. Losing this grant hampers our efforts to improve customer service to the UI program. We will also lose funding that would create different avenues for recouping overpayments of UI benefits.

e. On May 22, 2025, DOL cited the Clause to terminate a $869,000.00 award to DLT for the American Rescue Plan Act Unemployment Insurance (ARPA UI) Integrity grant (FAIN: 23A60UB000021), the purpose of which is to help states strengthen UI program integrity, including ID verification, fraud prevention and detection, and overpayment recovery efforts. The defendant agency cited the Clause and terminated this grant because it "does not effectuate agency priorities." The termination of the grant will harm Rhode Island because we will

    lose funding in support of combatting UI fraud, in addition to funding in support of timelier issuance of UI decisions.

f. On May 22, 2025, DOL cited the Clause to terminate a $155,134.00 award to DLT for the American Rescue Plan Act Unemployment Insurance (ARPA UI) Claimant Experience grant (FAIN: 23A55UB000014), the purpose of which is to revise UI correspondence by applying plain language principles to make information. The defendant agency cited the Clause and terminated this grant because it "does not effectuate agency priorities." The termination of the grant will harm Rhode Island because we will lose funding in support of strengthening claimant access to the UI program.

g. On March 31, 2025, EPA cited the Clause to terminate a $1,000,000.00 award to the RI Department of Health (RIDOH) for the Environmental Justice Government-to-Government (EJG2G) Program grant (FAIN: 00A01317), the purpose of which is to, among other things, monitor and improve indoor air quality by providing education, outreach, training and assistance including installing passive air quality sensors, electric stoves, and air purifiers in 50 single- and multi-family public housing residences in order to reduce exposure to nitrogen oxide, semi-volatile organic compounds, and particulate matter (pm2.5) in residences experiencing a high burden of asthma and poor air quality. The defendant agency cited the Clause and terminated this grant because it "no longer effectuates the program goals or agency priorities" and "[t]he objectives of the award are no longer consistent with EPA funding priorities." The termination of this grant has harmed or will harm Rhode Island because the areas of focus for

this project in Providence are all located in asthma hotspot regions, meaning that there is a high burden of asthma due to a high prevalence rate of asthma-related ED visits and/or hospitalizations, and Rhode Island will no longer be able to assess the full impact of air quality in these areas or provide mitigation measures to alleviate the burden of asthma. This will lead to a continued high volume of hospitalizations and emergency department visits which are costly financially and socially to the affected individuals, their families, and society at large (e.g., overburdening the health care system, missed time from work, missed time from school/high level of absenteeism which can lead to poor grades, overall quality of life, etc.).

h. On March 31, 2025, EPA cited the Clause to terminate a $944,618.00 award to the RI Department of Environmental Management (RIDEM) for the Environmental Justice Government-to-Government (EJG2G) Program grant (FAIN: 00A01316), the purpose of which is to, among other things, to strengthen community connections and build a collective understanding of environmental justice concerns in the upper Narragansett Bay watershed. The defendant agency cited the Clause and terminated this grant because it "no longer effectuates the program goals or agency priorities" and "[t]he objectives of the award are no longer consistent with EPA funding priorities." The termination of the EJG2G program will harm Rhode Island because it will no longer be able to provide direct funding to community-based organizations actively working on environmental justice efforts in Rhode Island to build coordination, collaboration,

and understanding in communities that share the highest burden of environmental pollution impacts.

i. On March 7, 2025, USDA cited the Clause to terminate a $1,124,836 award to RIDEM for the Local Food Purchase Assistance 2025 Cooperative Agreement grant (FAIN: AM25LFPA0000C118), the purpose of which is to allow state/territory and federally recognized tribal governments to expand upon prior local food purchase assistance program work, and to provide an opportunity for state/territory and federally recognized tribal governments who did not participate in the local food purchase assistance program to establish projects through LFPA25, wherein they purchase local, unprocessed or minimally processed domestic foods from local producers, targeting historically underserved farmers/producers/fishers and small businesses including processors, aggregators, and distributors, with food purchased to target distribution to underserved communities. The defendant agency cited the Clause and terminated this grant because it "no longer effectuates agency priorities." The termination of the Local Food Purchase Assistance 2025 Cooperative Agreement will harm Rhode Island because it will prevent the state from continuing to facilitate purchase of locally grown and caught food from over 100 producers, distributing it to more than 70 community organizations, which helped increase food access for underserved populations, promote sustainable agriculture, and strengthen the local food system. With the cancellation of the LFPA 25 allocation, these critical efforts will be discontinued, impacting vulnerable communities who rely on the program for fresh, locally sourced food, as well as local producers and community

organizations that will lose a vital source of support and market opportunities. Through program evaluation, it has been found that LFPA has been providing food to approximately 36,000 Rhode Islanders each month.

### Current Grants

10.  Rhode Island has current grants with Defendants that are at risk of termination pursuant to the Clause, including, but not limited to:

   a. On September 26, 2022, DOL awarded a $15,000,000.00 grant to DLT for the Quality Jobs, Equity, Strategy and Training (QUEST) grant (FAIN: DW392012260A44), the purpose of which is to, among other things, create high-quality jobs and a skilled workforce and provide opportunities for all workers to overcome the employment, economic, and health effects of the COVID-19 pandemic.

   b. On June 26, 2023, DOL awarded a $793,980.00 grant to DLT for the State Apprenticeship Expansion Formula grant (FAIN: 23A60AP000026), the purpose of which is to, among other things, enhance the opportunity for and utilization of the registered apprenticeship system in the industries with the most projected demand for skilled labor (construction, healthcare childcare, manufacturing, green plant-based industries, and business services), and to support operational public sector registered apprenticeship programs, those in development, and multiple programs in climate clean energy related occupations.

   c. On June 27, 2024, DOL awarded a $428,339.00 grant to DLT for the Senior Community Service Employment Program grant (FAIN: 24A60AD000171), the purpose of which is to move Senior Community Service Employment Program

participants into unsubsidized employment in both the public and private sectors, promote part-time work experiences in community service assignments for unemployed low-income individuals who are 55 years of age or older, and foster self-sufficiency among such individuals.

d. On May 29, 2024, DOL awarded a $150,000.00 grant to DLT for the Senior Community Service Employment Program (Technology Funds) grant (FAIN: 24A60AD000125), the purpose of which is to support grantees with IT implementation and support costs related to the Department of Labor transition and implementation of the new Grantee Performance Management System case management tool, including by supporting Senior Community Service Employment Program recipients, intended to benefit Americans ages 55 or older who are unemployed or low-income and have a family income of no more than 125% of the federal poverty level.

e. On September 14, 2023, DOL awarded a $100,000.00 grant to DLT for the Trade Adjustment Assistance grant (FAIN: 23A55TA000003), the purpose of which is to enable states to use Trade Adjustment Assistance program funds provided under this grant to cover the cost of related state administration and the provision of training, employment and case management services including ongoing and sustained outreach, job search allowances, and relocation allowances to trade affected workers.

### **Pending Grant Applications and Future Grants**

11. Rhode Island has pending grant applications with Defendants that, if awarded, could be at risk of termination pursuant to the Clause, including but not limited to:

a. On June 27, 2025, RIDOH applied for an Asbestos AHERA grant in the amount of $245,000 for the project period from October 1, 2025, to September 30, 2028, and that application remains pending.

b. On June 30, 2025, RIDOH applied for an EPA BEACH Act grant in the amount of $214,000 for the project period from October 1, 2025, to May 31, 2028, and that application remains pending.

c. On July 3, 2025, RIDOH applied for an EPA Voluntary School and Child Care Lead Testing and Reduction grant in the amount of $263,000 for the project period from October 1, 2025, to September 30, 2027, and that application remains pending.

d. On April 4, 2025, RIDOH applied for an EPA State Indoor Radon Grant in the amount of $225,000 for the project period from June 1, 2025, to May 31, 2026, and that application remains pending.

e. On June 3, 2025, DLT submitted grant applications for DOL Workforce Innovation and Opportunity Adult, Youth and Dislocated Worker grants in the amount of $8,204,857, and those applications remain pending.

f. On July 1, 2025, DLT submitted a grant application for a DOL Workforce Information grant in the amount of $310,831, and that application remains pending.

g. On July 8, 2025, DLT submitted a grant application for a DOL Work Opportunity Tax Credit grant in the amount of $64,103, and that application remains pending.

    h. On July 10, 2025, DLT submitted a grant application for a DOL Foreign Labor Certification grant in the amount of $89,262, and that application remains pending.

    i. On July 10, 2025, DLT submitted a grant application for a DOL Re-Employment Services and Eligibility Assessments grant in the amount of $1,978,075, and that application remains pending.

12. Rhode Island is likely to apply for grants from Defendants in the future.

    i. **U.S. Department of Agriculture ("USDA"):** From FY22 through FY24, for example, Rhode Island has received grants each year from USDA with annual totals ranging, approximately and at least, from $456,267,429.77 (FY24) to $594,407,986.57 (FY22). Rhode Island is likely to apply for grants from USDA in the future.

    ii. **U.S. Department of Commerce ("DOC"):** From FY22 through FY24, for example, Rhode Island has received grants each year from DOC with annual totals ranging, approximately and at least, from $36,367,508.00 (FY22) to $117,419,352.09 (FY23). Rhode Island is likely to apply for grants from DOC in the future.

    iii. **U.S. Department of Defense ("DOD"):** From FY22 through FY24, for example, Rhode Island has received grants each year from DOD with annual totals ranging, approximately and at least, from $22,267,495.12 (FY23) to $51,291,634.63 (FY22). Rhode Island is likely to apply for grants from DOD in the future.

    iv. **U.S. Department of Homeland Security ("DHS"):** From FY22 through FY24, for example, Rhode Island has received grants each year from DHS with annual totals ranging, approximately and at least, from $5,792,677.00 (FY23) to $46,931,843.49 (FY24). Rhode Island is likely to apply for grants from DHS in the future.

    v. **U.S. Department of Justice ("DOJ"):** From FY22 through FY24, for example, Rhode Island has received grants each year from DOJ with annual totals ranging, approximately and at least, from $12,177,701.00 (FY23) to $19,917,084.89 (FY22). Rhode Island is likely to apply for grants from DOJ in the future.

    vi. **U.S. Department of Labor ("DOL"):** From FY22 through FY24, for example, Rhode Island has received grants each year from DOL with annual totals ranging, approximately and at least, from $10,607,667.00 (FY23) to $38,984,426.36 (FY22). Rhode Island is likely to apply for grants from DOL in the future.

    vii. **U.S. Department of State ("State Department"):** In FY24, for example, Rhode Island received grants from the State Department for, approximately and at least, $199,461.78. Rhode Island is likely to apply for grants from the State Department in the future.

    viii. **U.S. Environmental Protection Agency ("EPA"):** From FY22 through FY24, for example, Rhode Island has received grants each year from EPA with annual totals ranging, approximately and at least, from

$65,178,136.00 (FY22) to $183,444,630.00 (FY24). Rhode Island is likely to apply for grants from EPA in the future.

ix. **National Endowment for the Humanities ("NEH"):** In FY24, for example, Rhode Island received grants from NEH for, approximately and at least, $187,103.93. Rhode Island is likely to apply for grants from NEH in the future.

x. **National Science Foundation ("NSF"):** From FY22 through FY24, for example, Rhode Island has received grants each year from NSF with annual totals ranging, approximately and at least, from $4,984,452.00 (FY22) to $14,434,694.00 (FY24). Rhode Island is likely to apply for grants from NSF in the future.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed this 16th day of July, 2025, in Providence, Rhode Island.

_____
Brian M. Daniels
Director, Office of Management and Budget
Rhode Island Department of Administration

14