IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| STATE OF NEW JERSEY, et al., <br><br> Plaintiffs, <br><br> v. <br><br> U.S. OFFICE OF MANAGEMENT AND BUDGET, et al., <br><br> Defendants. | No. 1:25-cv-11816-IT |

**BRIEF OF *AMICUS CURIAE*
THE STATE OF KANSAS
IN SUPPORT OF THE DEFENDANTS**
**(Leave to file granted on August 14, 2025)**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. ii

INTRODUCTION AND INTEREST OF *AMICUS CURIAE* ........................................................1

ARGUMENT ................................................................................................................2

    I.    Only the Attorney General can sue on behalf of Kansas ........................................3

    II.   Because Governor Kelly is trying to sue on behalf of Kansas, she lacks standing .............6

CONCLUSION ................................................................................................................9

CERTIFICATE OF SERVICE ..........................................................................................11

# **TABLE OF AUTHORITIES**

**CASES**

*City of Bangor v. Citizens Commc'ns Co.*, 532 F.3d 70 (1st Cir. 2008)..........................................7

*Copeland v. Robinson*, 970 P.2d 69 (Kan. Ct. App. 1998)..............................................................5

*Hafer v. Melo*, 502 U.S. 21 (1991) ..................................................................................................5

*Katz v. Pershing, LLC*, 672 F.3d 64 (1st Cir. 2012) ........................................................................7

*King v. Burwell*, 576 U.S. 473 (2015)..............................................................................................4

*Knight v. Kansas, Bd. of Regents, Univ. of Kan. Med. Ctr.*, No. CIV. A. 89-2392-0, 1990 WL 154206 (D. Kan. Sept. 6, 1990) .................................................................................... 3, 5

*Kobach v. U.S. Election Assistance Comm'n*, No. 13-CV-4095-EFM-TJJ, 2014 WL 494801 (D. Kan. Feb. 6, 2014) ........................................................................................................... 3, 6

*Mountain States Legal Found. v. Costle*, 630 F.2d 754 (10th Cir. 1980).........................................4

*Nash Cnty. Bd. of Educ. v. Biltmore Co.*, 640 F.2d 484 (4th Cir. 1981) .........................................4

*New State Ice Co. v. Liebmann*, 285 U.S. 262 (1932) .....................................................................2

*Off. of the People's Couns. for the District of Columbia v. D.C. Water & Sewer Auth.*, 313 A.3d 579 (D.C. 2024) ..............................................................................................................2

*Orion Wine Imports, LLC v. Applesmith*, 440 F. Supp. 3d 1139 (E.D. Cal. 2020) ........................7

*Piper v. Talbots, Inc.*, 507 F. Supp. 3d 339 (D. Mass. 2020) ..........................................................8

*Renne v. Geary*, 501 U.S. 312 (1991)..............................................................................................7

*State ex rel. Foster v. City of Kansas City*, 350 P.2d 37 (Kan. 1960).............................................5

*State ex rel. Miller v. Rohleder*, 490 P.2d 374 (Kan. 1971)............................................................3

*State ex rel. Morrison v. Sebelius*, 179 P.3d 366 (Kan. 2008).........................................................5

*State v. Bowles*, 79 P. 726 (Kan. 1905)............................................................................................5

*State v. Finch*, 280 P. 910 (Kan. 1929)............................................................................................3

*United States v. Winczuk*, 67 F.4th 11 (1st Cir. 2023).....................................................................4

*Weaver's Cove Energy, LLC v. R.I. Coastal Res. Mgmt. Council*, 589 F.3d 458 (1st Cir. 2009) .. 7

**CONSTITUTIONAL PROVISIONS**

Kan. Const. art. 1, § 1 ........................................................................................................ 2

Kan. Const. art. 1, § 3 ........................................................................................................ 6

Kan. Const. art. 1, § 6 ........................................................................................................ 8

Kan. Const. art. 11, § 9 ...................................................................................................... 7

U.S. Const. art. II .............................................................................................................. 2

U.S. Const. art. III ............................................................................................................. 7

**STATUTES**

2023 Kan. Sess. Laws ch. 94, § 7 ...................................................................................... 4

Kan. Stat. Ann. § 75-702 ............................................................................................ 2, 4, 8

**OTHER AUTHORITIES**

Brayden Day, *Gov. Kelly Speaks on Decision to Sue President Trump*, KSNT (Aug. 7, 2025, 10:52 A.M.), https://www.ksnt.com/capitol-bureau/gov-kelly-speaks-on-decision-to-sue-president-trump/ [https://perma.cc/3LHY-BM9D]........................................................................ 8

Off. of the Kan. Governor, *Governor Kelly Joins Multistate Lawsuit Challenging Trump Administration's Illegal Attempts to Terminate Critical Federal Funding to States* (Aug. 1, 2025), https://www.governor.ks.gov/Home/Components/News/News/734/55 [https://perma.cc/9ZS8-N6N8]. ............................................................................... 1, 8

Jeffrey S. Sutton, *Who Decides: States as Laboratories of Constitutional Experimentation* (2022) ................................................................................................................................. 2

## INTRODUCTION AND INTEREST OF *AMICUS CURIAE*

The State of Kansas has a paramount interest in the outcome of this litigation, where Kansas Governor Laura Kelly ostensibly sued to protect the constitutional authority of her office. To be clear: The Kansas Constitution does not make the Governor's authority turn on access to federal grants. As Governor Kelly has admitted, and as is apparent from the complaint, Governor Kelly is not suing to narrowly defend her constitutional authority; she is suing "on behalf of Kansas."[1] Indeed, most of her co-plaintiffs are states, and she has made no meaningful effort to distinguish her injuries from their injuries, or her requested relief from their requested relief. Kansas law, however, vests the Attorney General—not the Governor—with the authority to direct the State's litigation in federal court, vindicate the State's legal interests, and otherwise sue on behalf of the State. Governor Kelly's involvement in this suit is an unlawful end-run around the Kansas Constitution, Kansas statutes, and Kansas Supreme Court precedent.

To the extent that Governor Kelly has any limited power to narrowly sue over injuries to her constitutional office, she has not invoked it in this suit. Nor could she. Rather than alleging any actual, particularized, and concrete injuries to her constitutional authority, she has invoked only grievances related to certain state agency activities. In other words, she has pled attenuated and indirect harms to her office that, at most, are alleged harms to the State itself. But she cannot represent the State in this Court. Governor Kelly's allegations are insufficient to support her unilateral suit, and they do not provide the standing necessary for this Court to exercise Article III jurisdiction over her claims. Accordingly, this Court should dismiss her claims.

---

[1] Off. of the Kan. Governor, *Governor Kelly Joins Multistate Lawsuit Challenging Trump Administration's Illegal Attempts to Terminate Critical Federal Funding to States* (Aug. 1, 2025), https://www.governor.ks.gov/Home/Components/News/News/734/55 [https://perma.cc/9ZS8-N6N8].

1

## ARGUMENT

The States are known as the laboratories of democracy for good reason. *See New State Ice Co. v. Liebmann*, 285 U.S. 262, 311 (1932) (Brandeis, J., dissenting). In contrast to the federal Constitution, which vests all executive power in the President, *see* U.S. Const. art. II, state constitutions may—and often do—divide up executive authority among separately elected or appointed officers. A leading example is the division of executive power between the general administrative function (the governor) and the legal function (the attorney general). *See, e.g.*, Jeffrey S. Sutton, *Who Decides: States as Laboratories of Constitutional Experimentation* 149 (2022) ("The approach to [the selection of] state attorneys general illustrates how removed the state experience is from the federal one.").

Like the vast majority of states, *see id.*, Kansas has a separately elected Governor and Attorney General, *see* Kan. Const. art. 1, § 1. While the Governor exercises certain executive functions, she does not control Kansas's legal affairs, including its litigation in federal court. Rather, that authority lies *solely* with the Attorney General, *see* Kan. Stat. Ann. § 75-702(a), who declined to entangle Kansas as a plaintiff in this litigation—which he believes will ultimately be unsuccessful. He neither joined the suit nor delegated the authority to do so to Governor Kelly. Governor Kelly's executive functions do not create an implied authority to sue in federal court. Indeed, litigation involving state officers and agencies in federal court is expressly placed under the Attorney General's purview by Kansas law. *Id.*

But even assuming that Governor Kelly had some limited authority to seek redress for injuries to her role as a constitutional officer, this suit would necessitate broad authorization that she lacks. *Cf. Off. of the People's Couns. for the District of Columbia v. D.C. Water & Sewer Auth.*, 313 A.3d 579, 587 (D.C. 2024) (contrasting an agency's "limited" litigation authority "with the D.C. Attorney General's plenary authority to litigate"). Rather than alleging specific

2

and concrete injuries to her constitutional office, she has pled attenuated harms from state agencies losing (and continuing to lose) federal grants. Creative captioning aside, Governor Kelly is attempting to sue on behalf of the State; her public statements give away the game. This reality is cemented through the face of the complaint, where her alleged injuries are not specific to her office but instead are materially the same as those asserted by her state co-plaintiffs.

Because Governor Kelly has not alleged sufficient injuries to pursue this action, she lacks standing and is not entitled to any relief.

## I. Only the Attorney General can sue on behalf of Kansas.

Under Kansas law, "the Attorney General is the chief law officer of the state." *State v. Finch*, 280 P. 910, 911 (Kan. 1929); *see also State ex rel. Miller v. Rohleder*, 490 P.2d 374, 375 (Kan. 1971) (recognizing that "[t]he Attorney General, a constitutional officer, is the chief law enforcement officer of the state" (citation omitted)). And "unless restricted or modified by statute," his "powers are as broad as the common law," where "the attorney general was entrusted with the management of all legal affairs." *Kobach v. U.S. Election Assistance Comm'n*, No. 13-CV-4095-EFM-TJJ, 2014 WL 494801, at *2 (D. Kan. Feb. 6, 2014); *cf. Knight v. Kansas, Bd. of Regents, Univ. of Kan. Med. Ctr.*, No. CIV. A. 89-2392-0, 1990 WL 154206, at *2 (D. Kan. Sept. 6, 1990) (recognizing the Attorney General's role in coordinating and supervising the State's legal defense).

The Kansas Legislature has codified the Attorney General's broad authority to control the State's legal affairs, providing that he

> shall appear for the state, and prosecute and defend any and all actions and proceedings, civil or criminal, in the Kansas supreme court, the Kansas court of appeals *and in all federal courts*, in which the state shall be interested or a party, and shall, when so appearing, control the state's prosecution or defense.

3

Kan. Stat. Ann. § 75-702(a) (emphasis added). The Attorney General thus has the requisite full autonomy to initiate and control the State's litigation in the Kansas appellate courts and federal courts, forums where it is critical for the State to speak in one unified voice. In the Kansas appellate courts, the potential for binding precedent necessitates the Attorney General's oversight; in federal courts, the State is one entity with one advocate. *See Mountain States Legal Found. v. Costle*, 630 F.2d 754, 771 (10th Cir. 1980) (recognizing the "general rule" that "the state attorney general . . . alone has the right to represent the state as to litigation involving a subject matter of statewide interest"); *cf. Nash Cnty. Bd. of Educ. v. Biltmore Co.*, 640 F.2d 484, 496 (4th Cir. 1981) (recognizing value in a state litigating through one advocate).

To be sure, the Kansas Legislature has permitted itself and the Governor to have some role in the State's legal affairs:

> The attorney general shall *also*, when required by the governor or either branch of the legislature, appear for the state and prosecute or defend, in any *other court* or before any officer, in any cause or matter, civil or criminal, in which this state may be a party or interested or when the constitutionality of any law of this state is at issue and when so directed shall seek final resolution of such issue in the supreme court of the state of Kansas.

Kan. Stat. Ann. § 75-702(b) (emphases added). Reading subsections (a) and (b) together, the Attorney General has the absolute authority over the State's litigation in the Kansas appellate courts and federal courts.[2] *See United States v. Winczuk*, 67 F.4th 11, 17 (1st Cir. 2023) ("It is a 'fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme.'" (quoting *King v. Burwell*, 576 U.S. 473, 492 (2015)). Because state agencies and officers who act in their official capacities are part of the State, their federal litigation falls under the Attorney General's

---

[2] Indeed, before 2023, subsections (a) and (b) of Kan. Stat. Ann. § 75-702 were a single paragraph, further emphasizing that the reference to "any other court" in what is now subsection (b) does not extend to federal courts. *See* 2023 Kan. Sess. Laws ch. 94, § 7.

4

direction. *Cf. Hafer v. Melo*, 502 U.S. 21, 25 (1991) ("Suits against state officials in their official capacity . . . should be treated as suits against the State."); *Copeland v. Robinson*, 970 P.2d 69, 74 (Kan. Ct. App. 1998) (recognizing that "[o]fficial capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent" and that serving the Attorney General is appropriate means for suing Kansas executive officers); *Knight*, 1990 WL 154206, at *2 (recognizing the Attorney General's legal oversight of state agencies).

The Governor's and the Legislature's narrow role in requesting the Attorney General to act is limited to "other" forums—namely, state trial courts, where the State principally litigates through a network of district and county attorneys. The Legislature wanted to ensure "the authority of the government [was] felt, through its chief law officer, in every part of its territory" in case "local authorities" (*i.e.*, district and county attorneys) were "indifferent, incapable, or even antagonistic" when it came to protecting and advancing the public interest. *State v. Bowles*, 79 P. 726, 728 (Kan. 1905). In other words, this provision helps ensure the State may involve itself in litigation if local authorities cannot or will not vindicate the State's interest. But it does not authorize the Governor to initiate or join federal litigation on behalf of the State.

And even when the Governor or the Legislature tries to direct the Attorney General to litigate in state trial court, the Attorney General *still has the final say*. In previously considering a disagreement between the Attorney General and the Governor over litigation, the Kansas Supreme Court affirmed that because the Attorney General has a unique role as both a constitutional officer *and* as an officer of the court, the Attorney General need not (indeed, cannot) advance litigation he believes is "unmeritorious," even if the Governor disagrees. *State ex rel. Foster v. City of Kansas City*, 350 P.2d 37, 42 (Kan. 1960); *see also State ex rel. Morrison v. Sebelius*, 179 P.3d 366, 377 (Kan. 2008) (affirming that "the legislature, like the governor,

lacks constitutional authority to intrude into the attorney general's duties as an officer of the court").

Thus, the Governor's ability to request the Attorney General to litigate is limited to state trial courts. And even in that context, Kansas law does not require the Attorney General to indiscriminately follow legal directives from the Governor. Nor does Kansas law give the Governor carte blanche to sue after the Attorney General has declined her request to do so. There is no "exhaustion of remedies" whereby the Governor may sue if the Attorney General does not. And although the Attorney General may, in the appropriate case, delegate the authority to sue on behalf of the State in federal court, he has not done so for this suit, and any delegation cannot be implied. *See Kobach*, 2014 WL 494801, at *2–3 (finding a letter from the Attorney General was "sufficient" to authorize the Secretary of State to sue on behalf of the State in federal court).

Kansas law and precedent vest the Attorney General with exclusive "authority to manage all legal affairs of the State of Kansas"—both in and out of federal court. *See id.* at *3. And this includes the authority to direct the federal litigation of state agencies and officers, like the Governor.

## II.     Because Governor Kelly is trying to sue on behalf of Kansas, she lacks standing.

In joining this suit, Governor Kelly seeks to usurp the role of the Attorney General by suing on behalf of the State. Cognizant of the structural limitations imposed on her office, she mischaracterizes a dispute over grants as an injury to her constitutional authority to "enforce[] the laws of [Kansas]." Kan. Const. art. 1, § 3; Dkt. 64, ¶ 26. As support, she refers to instances where certain federal grants have been, or could be, terminated for the Kansas Department of Agriculture, Dkt. 64, ¶¶ 118, 169, and the Kansas Department of Health and Environment, *id.*, ¶¶ 159, 179, 190, 225, 229, 230. And she notes a couple pending federal grant applications from the

6

State. *Id.*, ¶ 234. Even assuming that a constitutional injury to her office *could* entitle her to sue in her official capacity as distinct from the State itself, Governor Kelly has not alleged a sufficient injury in this suit. Rather, she has alleged general harms to state agencies, effectively (and improperly) seeking to represent the State in this Court.

To come within this Court's jurisdiction, Governor Kelly must "clearly . . . allege facts demonstrating that [s]he is a proper party to invoke judicial resolution of the dispute and the exercise of the court's remedial powers." *Renne v. Geary*, 501 U.S. 312, 316 (1991) (quotation marks omitted); *see also* U.S. Const. art. III. She "must have standing to bring each and every claim that she asserts." *Katz v. Pershing, LLC*, 672 F.3d 64, 71 (1st Cir. 2012). Accordingly, Governor Kelly must demonstrate a concrete, particularized, and direct injury to the only thing she has sought to vindicate: her constitutional authority. *See City of Bangor v. Citizens Commc'ns Co.*, 532 F.3d 70, 92 (1st Cir. 2008). But she has not; instead, she has only alleged injuries to the State that are insufficient for her to maintain her claims.[3]

To start, the constitutional authority Governor Kelly invokes—enforcing Kansas's laws—is not contingent on federal grants. The Kansas Constitution does not make receipt of temporary disbursements of money from federal agencies an integral component of the State's governance.[4] Tellingly, Governor Kelly cites no Kansas constitutional provisions or statutes that have been, are, or will be rendered wholly unenforceable due to the cancellation of federal

---

[3] The Attorney General expects that the defendants will challenge this Court's subject-matter jurisdiction. But if the defendants advance other arguments, this Court may—and should—consider Governor Kelly's standing as a matter of its Article III jurisdiction, which this Court is "independently obligated" to consider "regardless of whether the parties raise the issue." *See Weaver's Cove Energy, LLC v. R.I. Coastal Res. Mgmt. Council*, 589 F.3d 458, 467 (1st Cir. 2009) (considering standing argument raised by Massachusetts in *amicus* brief); *see also Orion Wine Imports, LLC v. Applesmith*, 440 F. Supp. 3d 1139, 1146 (E.D. Cal. 2020) ("A court may consider an issue raised by an amicus *sua sponte* if it touches on fundamental issues of the court's jurisdiction.").

[4] The Kansas Constitution expressly references federal funds only in the context of internal improvements, providing that the State "*may* expend funds received from the federal government for any public purpose in accordance with the federal law authorizing the same." Kan. Const. art. 11, § 9 (emphasis added).

7

grants. And without any such citation, she has facially failed to plead an injury to her constitutional office. There is no indication that she cannot enforce state law without relief from this Court.

Certainly, the Governor oversees state executive agencies such as the departments of agriculture and health and environment, *see* Kan. Const. art. 1, § 6, and the termination (like the expiration) of federal grants may disrupt or alter the work of these agencies. But this disruption does not (and cannot) rise to the level of an injury to the Governor's constitutional authority. Otherwise, the Governor could sue whenever an agency under her purview is allegedly wronged by the federal government or by anyone else, an outcome that infringes upon the Attorney General's constitutional and statutory authority to direct the State's legal affairs in federal court. *See* Kan. Stat. Ann. § 75-702(a). Similarly, she could "delegate" her authority to sue to the heads of executive agencies, allowing unelected agency leaders to wholly undermine the Attorney General. *See id.*

Governor Kelly has alleged injuries to the general operation of state agencies, *i.e.*, the State of Kansas. She attempts to represent the State under the guise of representing herself. Indeed, she has acknowledged as much, candidly and publicly stating that she "joined this lawsuit on behalf of Kansas."[5] Her confession bolsters a fact apparent on the face of the complaint: that Governor Kelly is trying to sue on behalf of Kansas, not herself or her office. Erasing any doubts, Governor Kelly did not even attempt to materially distinguish her injuries from those asserted by her state co-plaintiffs who are represented by state attorneys general. And

---

[5] Off. of the Kan. Governor, *supra*; *see also, e.g.*, Brayden Day, *Gov. Kelly Speaks on Decision to Sue President Trump*, KSNT (Aug. 7, 2025, 10:52 A.M.), https://www.ksnt.com/capitol-bureau/gov-kelly-speaks-on-decision-to-sue-president-trump/ [https://perma.cc/3LHY-BM9D] ("I . . . used my constitutional power to represent the state, and that's what I'm doing."); *Piper v. Talbots, Inc.*, 507 F. Supp. 3d 339, 343 (D. Mass. 2020) (recognizing that this Court may judicially notice facts whose accuracy is not reasonably subject to dispute and may consider them at the motion-to-dismiss stage).

she requests the identical relief, in her capacity as Governor, that the properly-represented state plaintiffs request.

Governor Kelly cannot have her cake and eat it too. Either (1) she is suing only in her role as a constitutional officer, in which case she has not pled sufficient injuries to her constitutional authority, or (2) she is attempting to sue on behalf of the State, in which case any alleged injuries are neither to her nor hers to pursue. Both roads lead to the same conclusion: she lacks the ability to bring the State of Kansas into this litigation.

Governor Kelly's asserted injuries are really alleged harms to state agencies, not direct, concrete, and particularized harms to her constitutional authority. She has no constitutional or statutory power to pursue this suit on behalf of the State of Kansas and its agencies. And the lack of any injury to her constitutional authority—the only capacity in which she has sued and the only thing she might possibly be able to vindicate—is fatal to her standing.

## **CONCLUSION**

For the foregoing reasons, this Court should dismiss Governor Kelly's claims.

**Dated:** August 14, 2025                    Respectfully submitted,

                                            **KRIS W. KOBACH**
                                            **Attorney General of Kansas**

                                            *By: /s/ Nathaniel M. Lindzen*
                                            Nathaniel M. Lindzen
                                            MA Bar No. 689999
                                            **Law Office of Nathaniel M. Lindzen**
                                            57 School Street
                                            Wayland, MA 01778
                                            Phone: (212) 810-7627
                                            Email: nlindzen@corpfraudlaw.com

                                            */s/ James R. Rodriguez*
                                            James R. Rodriguez*
                                            KS Bar No. 29172
                                            *Assistant Attorney General*
                                            **Office of the Kansas Attorney General**
                                            120 SW 10th Avenue, 2nd Floor
                                            Topeka, Kansas 66612
                                            Phone: (785) 296-2215
                                            Fax: (785) 296-6296
                                            Email: Jay.Rodriguez@ag.ks.gov
                                            * *Pro Hac Vice application forthcoming*

                                            ***Attorneys for the State of Kansas***

## **CERTIFICATE OF SERVICE**

      I hereby certify that on this 14th day of August, 2025, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send a notice of electronic filing to all counsel of record who have entered an appearance.

                                        */s/ Nathaniel M. Lindzen*
                                        Nathaniel M. Lindzen