**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

STATE OF NEW JERSEY, *et al.*,

Plaintiffs,

*v.*

U.S. OFFICE OF MANAGEMENT AND BUDGET, *et al.*,

Defendants.

Case No. 1:25-cv-11816-IT

# MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR A STAY PENDING APPEAL AND ADMINISTRATIVE STAY

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

JOSEPH E. BORSON
Assistant Branch Director
Federal Programs Branch

STEPHEN M. PEZZI
Chief Litigation Counsel
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street NW
Washington, DC 20005
Tel: (202) 305-8576
Email: stephen.pezzi@usdoj.gov
Florida Bar No. 1041279

*Counsel for Defendants*

# TABLE OF CONTENTS

INTRODUCTION .......... 1

BACKGROUND .......... 2

ARGUMENT .......... 4

I. The government is likely to succeed on the merits. .......... 4

II. The equitable factors favor a stay pending appeal. .......... 12

CONCLUSION .......... 13

## INTRODUCTION

The government respectfully moves for a stay pending appeal of the Court's judgment, ECF No. 142. This case concerns a regulation issued by the Office of Management and Budget (OMB) and incorporated into regulations promulgated by nearly every federal award-granting agency. The language at issue authorizes agencies to terminate a grant if (among other requirements) the agency determines the award "no longer effectuates the program goals or agency priorities" (the Termination Clause). 2 C.F.R. § 200.340(a)(4) (2024); *see also* 2 C.F.R. § 200.340(a)(2) (2020) (predecessor regulation with similar language). The Court did not invalidate any of those regulations, however; nor did the Court determine that any particular application of those regulations to terminate an award was before it. Instead, the Court issued a standalone declaratory judgment opining on "the meaning of the Termination Clause" in the abstract. Mem. & Order at 18, ECF No. 122. In particular, the Court held that the Termination Clause "do[es] not allow terminations of awards based on new program goals or agency priorities that an agency identifies after granting the award." *Id.* at 32. Respectfully, that judgment is mistaken for several reasons.

At the outset, Plaintiffs' declaratory-judgment claim does not challenge final agency action, as required for judicial review under the APA. 5 U.S.C. §§ 702, 704. The abstract meaning of a regulation is not an agency action at all, much less a final action. The Court did not suggest otherwise but instead concluded that the Termination Clause constitutes the requisite final agency action. Yet the Court did not resolve any challenge to the Termination Clause, as the only claim urging that the Termination Clause was unlawful was pled in the alternative and expressly not addressed in the Court's opinion. Thus, the only agency actions in sight are hypothetical future grant terminations that might invoke the Termination Clause, and any challenges to such terminations would be contract claims that must be brought in the Court of Federal Claims, not federal district court. *See Nat'l Insts. of Health v. American Pub. Health Ass'n* (*APHA*), 145 S. Ct. 2658, 2660 (2025).

On the merits, this Court's interpretation of the Termination Clause is erroneous. The Court determined that the Termination Clause permits termination only if the agency determines that the award "no longer effectuates the program goals or agency priorities" that the agency had identified

when the award was initially made. Judgment at 3, ECF No. 142; Mem. & Order at 20-21, 32 (quoting 2 C.F.R. § 200.340(a)(4) (2024), ECF No. 122. That interpretation contradicts the plain text of the Termination Clause and makes little sense. The point of the Termination Clause is to provide agencies with flexibility to terminate an award when they determine that, based on developments since the award was made, the award is no longer in the government's interest, and it would be peculiar to draft a provision for that purpose without allowing agencies to consider changes in agency priorities.

The equitable factors likewise favor a stay. The judgment significantly intrudes on Executive Branch prerogatives to decide how to allocate federal funds, and Plaintiffs will suffer no comparable injury if the declaratory judgment is stayed pending appeal, as they remain entitled to raise any breach-of-contract claims that might arise in the appropriate forum at the appropriate time.

## BACKGROUND

**1.** Many federal statutes provide discretionary authority to Executive Branch agencies to allocate federal funding to award grants to private entities, as well as to state or local governments. OMB provides agencies with uniform guidance about grant-making decisions, *see* 2 C.F.R. § 200.100 *et seq.*, which Plaintiffs allege has been incorporated, in substantial part, into agencies' own grant-making regulations, Am. Compl., ECF No. 64, ¶¶ 69-70, 106, 136, 153, 162, 172, 184, 193, 214, 219, 239, 249. Under OMB's Guidance, agencies and recipients may terminate awards in certain circumstances, 2 C.F.R. § 200.340(a), including, as relevant here, "pursuant to the terms and conditions of the Federal Award, including, to the extent authorized by law, if an award no longer effectuates the program goals or agency priorities," *id.* § 200.340(a)(4) (2024); *see also* 2 C.F.R. § 200.340(a)(2) (2020) (predecessor regulation allowing agencies to terminate "to the greatest extent authorized by law, if an award no longer effectuates the program goals or agency priorities").

**2.** Plaintiffs (20 states, three state governors, and the District of Columbia) filed this suit against 26 government defendants: OMB, virtually every award-making agency in the Executive Branch, and each of their leaders in their official capacities. Am. Compl., ECF No. 64. The bulk of Plaintiffs' amended complaint concerns alleged harms from past terminations of awards that the

defendant agencies determined "no longer effectuate[d] . . . agency priorities." Am. Compl. ¶¶ 1-12 (second alteration in original) (quotation marks omitted). But Plaintiffs did not challenge any of those termination decisions or seek restoration of any terminated grants. Instead, Plaintiffs sought declaratory and prospective relief concerning the Termination Clause itself.

Specifically, Plaintiffs' amended complaint asserted three causes of action, all pled in the alternative. Count 1 sought a declaratory judgment as to the meaning of the Termination Clause. In Plaintiffs' view, the Termination Clause "authorizes a grant to be terminated only if the grant no longer effectuates 'agency priorities' that were identified at the time of the federal award," not "changed agency priorities identified after the time of the federal award."[1] Am. Compl. ¶ 290. Count 2 asserted that together the defendant agencies "made a decision" interpreting the Termination Clause as allowing termination based on changed agency priorities and challenged that "decision" as contrary to law. *Id.* ¶¶ 296-305. That Count sought vacatur of that "decision" as well as an injunction against "any action taken to implement that decision." *Id.* ¶ 305. Count 3 alleged that, were plaintiffs to lose on Counts 1 and 2—and thus, if the Termination Clause were not interpreted the way plaintiffs prefer—the Termination Clause is "arbitrary and capricious." *Id.* ¶¶ 306-19. That Count sought, among other requested relief, an order setting aside the Termination Clause and enjoining agencies from enforcing the Termination Clause or incorporating it into future awards. *Id.* ¶ 319.

**3.** Plaintiffs moved for partial summary judgment only as to Count 1, their declaratory-judgment claim. ECF Nos. 65-67. The government opposed that motion and simultaneously moved to dismiss the amended complaint in its entirety. ECF No. 89. The Court granted plaintiffs' motion for partial summary judgment and denied the government's motion to dismiss Count 1. Mem. & Order, ECF No. 122. The Court determined that Count 1 was brought under the APA and challenged a "final agency action" because it "challenge[d] the [Termination Clause] itself." *Id.* at 17-19. On the merits, the Court determined that while "the language of the Termination Clause alone does not fully

[1] The Court did not consider Plaintiffs' additional requested declaratory relief, Am. Compl. ¶¶ 286-89, because the government agreed that the Termination Clause cannot be invoked to terminate an award in violation of regulations or other federal law, *see* Mem. & Order at 19.

confirm Plaintiffs' interpretation," based on the regulatory structure, rulemaking history, and the Spending Clause, the Termination Clause "do[es] not allow terminations of awards based on new program goals or agency priorities that an agency identifies after granting the award." *Id.* at 22, 32. The Court subsequently granted the parties' joint motion to certify partial final judgment as to Count 1 under Rule 54(b) of the Federal Rules of Civil Procedure. ECF No. 142. Defendants then filed a notice of appeal of that judgment, ECF No. 144, and now move for a stay pending appeal.

## ARGUMENT

A stay pending appeal is warranted. The government is likely to succeed on the merits of its appeal, the government will face irreparable injury absent a stay, and the balance of equities and public interest support a stay. *See Nken v. Holder*, 556 U.S. 418, 426 (2009).

### I. THE GOVERNMENT IS LIKELY TO SUCCEED ON THE MERITS.

#### a. Count 1 does not challenge any final agency action.

The APA limits judicial review to challenges of final agency action. 5 U.S.C. §§ 702, 704; *Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 882 (1990). Count 1, which asked the Court to "declare the meaning of the Termination Clause," Mem. & Order at 18, does not satisfy that requirement.

"[T]he meaning of the Termination Clause" is not an agency action. Mem. & Order at 18, ECF No. 122. An agency action is one of the "circumscribed, discrete" "decisions made or outcomes implemented by an agency" as enumerated by statute: a '"rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act."' *Norton v. Southern Utah Wilderness All.*, 542 U.S. 55, 62 (2004) (emphasis omitted) (quoting 5 U.S.C. § 551(13)). The promulgation of a rule like the Termination Clause is final agency action, but plaintiffs' separate challenge to the promulgation of the Termination Clause (Count 3)—pled in the alternative and dependent on an interpretation of the regulation that the Court rejected—was not adjudicated by this Court. Instead, the Court opined only on the Termination Clause's abstract meaning, which is neither circumscribed nor discrete. Nor is "the meaning" of a rule a "decision[] made or outcome[] implemented by an agency." *Id.* And "the meaning" of a rule is not one of the APA's enumerated agency actions—it is not a "rule, order, license,

sanction, relief, or the equivalent or denial thereof," nor is it a "failure to act." 5 U.S.C. § 551(13). To the contrary, the APA specifies that a court may be required to "determine the meaning . . . of an agency action," but only "[t]o the extent necessary to decision and when presented" in the course of the court's determination whether to "compel agency action" or "hold unlawful and set aside agency action." *Id.* § 706. But determining the meaning of a rule is not an end unto itself.

Even if an agency had assessed the Termination Clause's meaning—though Plaintiffs' separate claim on that score, Count 2, was not addressed by the Court and has now been dismissed, ECF No. 143—that assessment itself would not be final agency action. *See APHA*, 145 S. Ct. 2658, 2662 (2025) (Barrett, J., concurring in the partial grant of the application for stay) ("It is not obvious . . . that [an agency]'s guidance" as to grant termination "is final agency action."). An agency action is final if it both "mark[s] the consummation of the agency's decisionmaking process" and is a decision "by which rights or obligations have been determined, or from which legal consequences will flow." *Corner Post, Inc. v. Board of Governors of the Fed. Rsrv. Sys.*, 603 U.S. 799, 808 (2024) (alteration in original) (quotation marks omitted). No rights and obligations are determined by an abstract decision about the meaning of a rule, and no legal consequences flow from it. To the contrary, the meaning of a rule "does not itself adversely affect complainant but only affects his rights adversely on the contingency of future administrative action." *DRG Funding Corp. v. HUD*, 76 F.3d 1212, 1214 (D.C. Cir. 1996) (quoting *Rochester Tel. Corp. v. United States*, 307 U.S. 125, 130 (1939)) (holding that such an action is not final agency action). Perhaps if an agency took some further action with respect to its understanding of the Termination Clause, that additional action could be sufficiently "final." But, as the Court's opinion explained, Count 1 challenges "the meaning of the Termination Clause," not any agency's implementation of the Termination Clause. Mem. & Order at 18.

Contrary to this Court's conclusion, the Termination Clause itself cannot serve as the requisite final agency action. That is because Count 1 does not allege "legal wrong because of" the Termination Clause. 5 U.S.C. § 702; *see Lujan*, 497 U.S. at 882. In fact, Count 1 does not challenge the Termination Clause as unlawful at all. Nor does Count 1 seek any relief from the Termination Clause, such as an order preventing the federal government from invoking it. 5 U.S.C. § 706. Rather, plaintiffs raised

such a claim and sought such relief in Count 3, which was pled only in the alternative to Count 1, which this Court did not address, and which Plaintiffs have now dismissed. ECF No. 143. The premise of Count 1 is that the Termination Clause is valid but should be interpreted in a particular way. That is in no respect a challenge to the Termination Clause.

To the extent Count 1 could be construed as challenging a hypothetical future grant-termination decision that invokes the Termination Clause—and assuming the claim could be established with sufficient precision and certainty to defeat ripeness and related jurisdictional concerns—that claim could not properly be considered by this Court because it would be "essentially a contract dispute," which "belongs in the [Court of Federal Claims] rather than in a district court." *Massachusetts v. National Insts. of Health*, 164 F.4th 1, 10 (1st Cir. 2026) (quotation marks omitted); *see also APHA*, 145 S. Ct. at 2660 (the district court lacked "jurisdiction to adjudicate claims 'based on' . . . grants."). The D.C. Circuit has held that precisely this sort of claim, even in the declaratory-judgment posture, is precluded by the Tucker Act. *See Ingersoll-Rand Co. v. United States*, 780 F.2d 74, 77-78 (D.C. Cir. 1985) (holding that APA claim seeking declaratory judgment that a federal agency's termination of a contract violated federal regulations was a contract claim because "the essential rights at stake . . . are contractual"). Accordingly, neither Plaintiffs nor the Court identified any grant decision as a final agency action that gave rise to a cause of action under the APA.

**b. The Court's interpretation of the Termination Clause is wrong on the merits.**

The absence of a final agency action is dispositive, but in any event the Court's interpretation of the Termination Clause was also wrong on the merits.

**1.** First, the text. The Termination Clause allows an agency to terminate a grant "if an award no longer effectuates the program goals or agency priorities." 2 C.F.R. § 200.340(a)(4) (2024). The phrase "no longer effectuates" makes clear that the regulation contemplates a change in circumstances between when the grant was awarded and when the agency decides to terminate the grant. After all, the grant must have "effectuate[d] the program goals [and] agency priorities" at the time the grant was initially awarded. Otherwise, the agency would not have made the award in the first place. In plain

English, if "an award no longer effectuates the program goals or agency priorities," that simply means there is now a disconnect between the award and the program goals or agency priorities. But that disconnect can arise from changes on either end—either something changed vis-à-vis the award (*e.g.*, the recipient has not performed as expected), or something changed at the agency (*e.g.*, goals or priorities shifted), or both. Either way, an agency might reasonably conclude that the award "no longer effectuates the program goals or agency priorities." *Id.* The Termination Clause explicitly contemplates that an agency may exercise that sort of discretion, as a responsible steward of the public fisc.

The plain meaning of the Termination Clause is further reinforced by the meaningfully different language used in the immediately preceding subsection, which addresses another permissible ground for agency termination of an award. Section 200.340(a)(3)[2] provides that if a recipient requests partial termination of an award, the agency may terminate the entire award if the agency "determines that the remaining portion of the Federal award will not accomplish the purposes for which the Federal award was made." 2 C.F.R. § 200.340(a)(3) (2024). That is a backward-looking inquiry, stated in the past tense, requiring the agency to compare the remaining portion of the award to the agency's purposes at the time "the Federal award *was made*." *Id.* (emphasis added). By contrast, the Termination Clause contains no similar language. Instead, it is stated in the present tense—calling for a here-and-now analysis of whether the award currently "effectuates the program goals or agency priorities." *Id.* § 200.340(a)(4). OMB's use of the past tense in (a)(3) and the present tense in the Termination Clause is strong evidence that the Termination Clause does not limit termination to awards that "no longer effectuate[] the program goals or agency priorities," *id.*, identified at the time "the Federal award was made," *id.* § 200.340(a)(3); *see Rudisill v. McDonough*, 601 U.S. 294, 308 (2024) ("[W]e generally 'presume differences in language like this convey differences in meaning.'"); *United States v. Wilson*, 503 U.S. 329, 333 (1992) (recognizing that "Congress' use of a verb tense is significant in construing statutes").

[2] The parallel provision in the 2020 version of the regulation is 2 C.F.R. § 200.340(a)(4).

The plain text of the Termination Clause thus allows an agency to terminate awards when it reorients its priorities for all manner of policy reasons, for example, in response to an emergency (like a global pandemic), or a problem that arises in a particular part of the country (like a natural disaster), or if the problem the award was designed to address has been resolved in some other way. It would be odd for an agency to promulgate a regulation to preserve its ability to terminate grants that no longer advance agency priorities without allowing itself to address circumstances like these, and as noted above the provision's text does not lend itself to that interpretation.

Nor does anything in the Termination Clause's text distinguish between changes in agency priorities based on external factors like a pandemic or natural disaster and changes in agency priorities based on new direction from politically accountable leadership, which is an entirely permissible motivating factor for agency decisions. *Department of Com. v. New York*, 588 U.S. 752, 781 (2019) ("[A] court may not set aside an agency's policymaking decision solely because it might have been influenced by political considerations or prompted by an Administration's priorities."). And it is entirely natural to read OMB's Uniform Guidance, which OMB periodically revises to "support implementation of . . . Administration priorities," to address this common circumstance. Guidance for Grants and Agreements, 85 Fed. Reg. 49506, 49506 (Aug. 13, 2020) (2020 Final Rule); Guidance for Federal Financial Assistance, 89 Fed. Reg. 30046, 30046 (Apr. 22, 2024) (2024 Final Rule) (similar). Indeed, "the very point of a lump-sum appropriation is to give an agency the capacity to adapt to changing circumstances and meet its statutory responsibilities in what it sees as the most effective or desirable way." *Lincoln v. Vigil*, 508 U.S. 182, 192 (1993). And "ensur[ing]" that "policies prepared by other federal agencies are consistent with Administration policy" is one of OMB's key roles. *Public Citizen, Inc. v. OMB*, 598 F.3d 865, 867 (D.C. Cir. 2010).

**2.** The Court acknowledged that "the language of the Termination Clause alone does not fully confirm [its] interpretation." Mem. & Order at 22. As discussed above, the Termination Clause's text and context make its meaning clear, such that resort to other considerations—regulatory structure, rulemaking history, and the Spending Clause—is unnecessary. Regardless, none of those considerations supports the Court's interpretation.

i. The Court reasoned that the Guidance requires agencies to disclose "program goals" and "funding priorities" before the award is made, and, therefore, the Court inferred that the Termination Clause prohibits termination if "the program goals and agency priorities" were not disclosed to the recipient before the award was made. Mem. & Order at 24-26 (emphasis omitted) (quotation marks omitted).

To start, the Guidance does not require agencies to disclose "agency priorities" at any point during the grant-making process. To the extent the Court conflated "funding priorities," which agencies must disclose in the Notice of Funding Opportunity "if any" exist, 2 C.F.R. pt. 200 app. I(b)(3)(i)(B), with "agency priorities" from the Termination Clause, that was mistaken, *see Pulsifer v. United States*, 601 U.S. 124, 149 (2024) ("In a given statute . . . different terms usually have different meanings."), and the Court cited no authority for that leap.

And while disclosing "[p]rogram goals" in the Notice of Funding Opportunity, 2 C.F.R. pt. 200 app. I(b)(3)(i)(C), may help applicants decide whether to apply and how to tailor their applications, that disclosure is in no way inconsistent with allowing the agency to later change those goals and terminate grants that are no longer appropriate. Indeed, agencies are not required to state the program goals in the award itself. *Compare* 2 C.F.R. § 200.211 (reciting information required to be included in the award, which does not include program goals), *with id.* § 200.301(a) (recommending that agencies "should clearly communicate the specific program goals and objectives in the Federal award"). And the other provisions the Court relied on do not require disclosure of the program goals at all. *See id.* § 200.202 (requiring agencies identify "goals" during program design); *id.* § 200.203(b)(1) (requiring agencies submit "goals" to the General Services Administration").

ii. The Court also reasoned that the Termination Clause does not allow termination of awards that "no longer effectuate[] the program goals or agency priorities" identified after the award was made because, if that were true, there would be no need for an agency to invoke its authority under § 200.340(a)(2) or (a)(3)[3] to terminate an award, rendering those provisions superfluous. Mem. &

[3] The parallel provisions in the 2020 version of the regulation were § 200.340(a)(3) and (a)(4), respectively.

Order at 22-23. Subsection (a)(2) allows an agency to terminate an award with the recipient's consent, 2 C.F.R. § 200.340(a)(2) (2024), and subsection (a)(3) allows an agency to terminate an award if the recipient requests a partial termination and the agency determines that the remaining portion of the award "will not accomplish the purposes for which the Federal award was made," *id.* § 200.340(a)(3).

There is no surplusage problem: the different termination provisions apply in different circumstances. *See Feliciano v. Dep't of Transp.*, 605 U.S. 38, 51-52 (2025). If an award "no longer effectuates the program goals or agency priorities" identified before or after the award was made, the agency could terminate the award under the Termination Clause, even if subsection (a)(2) or (a)(3) would not allow termination because, for example, the recipient did not consent to termination or had not requested a partial termination. Conversely, subsections (a)(2) and (a)(3) would allow termination in situations where the Termination Clause would not. An agency and recipient might agree to terminate based on the recipient's priorities or capabilities, even if the award would still effectuate agency priorities if it were carried out. And an agency's determination as to whether a recipient should continue to perform part of an award raises different considerations from the Termination Clause, so it is unsurprising that such unique circumstances are addressed in a separate provision.

Even if the government's interpretation could lead to some overlap in certain situations where multiple termination provisions would apply—like if the recipient consents to termination and the Termination Clause would also allow unilateral termination—that is neither surprising nor problematic; it merely reflects that the Guidance "employ[s] a belt and suspenders approach" to grant termination. *Atlantic Richfield Co. v. Christian*, 590 U.S. 1, 14 n.5 (2020) (recognizing that in such circumstances "sometimes the better overall reading of the [text] contains some redundancy" (citation modified)).

iii. The rulemaking history likewise does not support the Court's interpretation. For example, in response to the proposed rules published in 2020 and 2024, OMB received comments expressing concern that the Termination Clause would allow agencies to terminate awards based on changed agency priorities. *See* Am.'s Serv. Comm'ns, *Comments and Recommendations* 2 (Mar. 25, 2020), https://perma.cc/J5UW-DC6X; CliftonLarsonAllen LLP, *Comments* 4 (Mar. 23, 2020),

https://perma.cc/8MS3-GQ9T; 89 Fed. Reg. at 30089. Those commenters thus evidently understood the Termination Clause consistent with its natural reading and not with Plaintiffs' strained interpretation. And the Court's reliance on OMB's statement that the Termination Clause does not allow agencies "to terminate grants arbitrarily," was misplaced. Mem. & Order at 28-29 (quotation marks omitted). Deciding that an award "no longer effectuates the program goals or agency priorities" identified after the award was made is not necessarily arbitrary—as discussed above, in a range of circumstances it is perfectly appropriate.

Next, the Court relied on two, non-exclusive examples of permissible terminations included in the 2020 Final Rule. Mem. & Order at 28-29. Although these examples discussed additional evidence rather than a change in agency priorities, "giving one example does not convert express inclusion into restrictive equation." *S.D. Warren Co. v. Maine Bd. of Env't Prot.*, 547 U.S. 370, 379-80 (2006). Again, while the Termination Clause permits termination in situations identified by the Court—where the award "no longer effectuates the program goals or agency priorities" identified at the time the award was initially made—OMB gave no indication that the Termination Clause is limited to such situations. Instead, the Termination Clause contemplates a comparison between the award and the program goals or agency priorities, including those identified before or after the award was made.

Lastly, the Court observed that the 2024 Final Rule requires the award's terms and conditions to disclose the termination conditions. Mem. & Order at 29. But that discussion goes to the requirement that the Termination Clause itself be disclosed to the grant recipient; it does not suggest that the program goals or agency priorities must themselves be disclosed in the award document—and there is no such requirement, *see* 2 C.F.R. § 200.211—much less that those goals or priorities are locked at the time the grant is issued. Thus, the Final Rule merely made clear that an agency may invoke the Termination Clause as grounds to terminate an award, so long as the award's terms and conditions include "the language" that the agency may terminate the award if it "no longer effectuates the program goals or agency priorities." 89 Fed. Reg. at 30089.

iv. Finally, the Court also suggested that the government's interpretation of the Termination Clause "would violate the Spending Clause of the Constitution" by "impos[ing] a condition on the grant of federal moneys." Mem. & Order at 30-31 (quotation marks omitted). But the Spending Clause is not implicated here at all because the Termination Clause is not a funding condition; rather, it provides agencies the ability to unilaterally terminate awards based on the agencies' priorities. *See Northrop Grumman Corp. v. United States*, 46 Fed. Cl. 622, 627 (2000) ("The Government's right to terminate a contract for convenience is broad."). And the Termination Clause was unambiguously disclosed to recipients before grants were awarded, *see* 2 C.F.R. § 200.211(c)(1)(v), resolving any concerns under the Spending Clause, *see Pennhurst State Sch. & Hosp. v. Halderman*, 451 U.S. 1, 17 (1981).

## II. THE EQUITABLE FACTORS FAVOR A STAY PENDING APPEAL.

The Court should stay the judgment because the government will be irreparably injured otherwise and both the balance of equities and the public interest favor a stay. *See Nken*, 556 U.S. at 435 (noting that the latter two factors merge in cases involving the government).

The government faces imminent irreparable harm because the judgment will impede agencies from terminating awards that "no longer effectuate[] the program goals or agency priorities" of the current Administration. 2 C.F.R. § 200.340(a)(4) (2024); *see also* Judgment at 3, ECF No. 142. First, requiring the Executive Branch to continue to fund such awards—money that the government may never recover—irreparably harms the government, as the Supreme Court has recognized twice in granting stays on this basis. *See APHA*, 145 S. Ct. at 2660 (emphasizing that the federal government is irreparably harmed if its funds "cannot be recouped," such as when federal grant recipients "do not state that they will repay grant money if the Government ultimately prevails" (quotation marks omitted)); *Department of Educ. v. California*, 604 U.S. 650, 652 (2025) (per curiam) (similar). And, in doing so, the judgment interferes with the Executive Branch's authority and ability to decide how to allocate federal funds and inflicts a severe separation-of-powers harm on the Executive Branch by "improperly intrud[ing] on a coordinate branch of the Government." *Trump v. CASA, Inc.*, 606 U.S. 831, 859 (2025) (citation modified).

On the other hand, Plaintiffs have no cognizable interest in obtaining a prospective declaratory judgment as to the abstract meaning of the Termination Clause. Nor do they have a cognizable interest in receiving federal funds to which they are not legally entitled. Were a defendant agency to terminate a plaintiff's award in the future, that plaintiff could bring suit challenging that termination and seeking damages in the Court of Federal Claims. *See California*, 604 U.S. at 652 ("[I]f respondents ultimately prevail, they can recover any wrongfully withheld funds through suit in an appropriate forum."). Plaintiffs thus would suffer no comparable injury from a stay. Plaintiffs' unexplained delay in bringing suit—filing the initial complaint five months after they allege the agency defendants began terminating grants in violation of the Termination Clause—further "detracts from [any] claim of irreparable harm." *Charlesbank Equity Fund II v. Blinds To Go, Inc.*, 370 F.3d 151, 163 (1st Cir. 2004).

The equities thus sharply favor the government.

## **CONCLUSION**

For these reasons, the Court should stay its judgment pending appeal and should grant an administrative stay pending consideration of this motion.

Date: October 22, 2026

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

JOSEPH E. BORSON
Assistant Branch Director
Federal Programs Branch

/s/ Stephen M. Pezzi
STEPHEN M. PEZZI
Chief Litigation Counsel
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street NW
Washington, DC 20005
Tel: (202) 305-8576
Email: stephen.pezzi@usdoj.gov
Florida Bar No. 1041279

*Counsel for Defendants*