UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| STATE OF NEW JERSEY, et al., Plaintiffs, v. UNITED STATES OFFICE OF MANAGEMENT AND BUDGET, et al., Defendants. | * * * * * * * * * * | Civil Action No. 1:25-cv-11816-IT |

MEMORANDUM & ORDER

November 3, 2026

TALWANI, D.J.

Before the court is Defendants' Motion for a Stay Pending Appeal and Administrative Stay [Doc. No. 145] ("Motion").

Plaintiffs—twenty states,[1] three governors,[2] and the District of Columbia—brought this action against Defendants,[3] seeking, *inter alia*, declaratory relief under the Declaratory Judgment

[1] The twenty states are: New Jersey, Massachusetts, New York, Arizona, California, Colorado, Connecticut, Delaware, Hawai'i, Illinois, Maine, Maryland, Michigan, Minnesota, Nevada, New Mexico, Oregon, Rhode Island, Vermont, and Wisconsin.

[2] The three governors bringing suit in their official capacity are Governor Josh Shapiro of Pennsylvania, Governor Laura Kelly of Kansas, and Governor Andy Beshear of Kentucky.

[3] Defendants are (with substitutions in accordance with Fed. R. Civ. P. 25(d)) U.S. Office of Management and Budget ("OMB"); Russell Vought, in his official capacity as Director of the OMB; the U.S. Department of Agriculture ("USDA"); Brooke Rollins, in her official capacity as Secretary of USDA; the U.S. Department of Commerce; Howard Lutnick, in his official capacity as Secretary of Commerce; the U.S. Department of Defense; Pete Hegseth, in his official capacity as Secretary of Defense; the U.S. Department of Homeland Security; Markwayne Mullin (substituted for Kristi Noem), in his capacity as Secretary of Homeland Security; the U.S. Department of Justice; Todd Blanche (substituted for Pamela Bondi), in his official capacity as Attorney General; the U.S. Department of Labor; Keith E. Sonderling (substituted for Lori Chavez-DeRemer), in his official capacity as Secretary of Labor; the U.S. Department of State; Marco Rubio, in his official capacity as Secretary of State; the U.S. Environmental Protection Agency ("EPA"); Lee Zeldin, in his official capacity as Administrator of the EPA; the U.S. Federal Emergency Management Agency ("FEMA"); Cameron Hamilton (substituted for David

Act and the Administrative Procedure Act ("APA") to clarify the meaning of 2 C.F.R. § 200.340's "Termination Clause"[4] and, by extension, the rights and obligations of the parties subject to the grant agreements at issue in this case. Am. Compl., Count I: Declaratory Judgment, ¶¶ 278–295 [Doc. No. 64]; see also id., Prayer for Relief, 82.

On July 17, 2026, the court denied Defendants' Motion to Dismiss [Doc. No. 88] and granted Plaintiffs' Motion for Summary Judgment [Doc. No. 65] on Count I, Plaintiffs' claim for declaratory relief, declaring that "2 C.F.R. § 200.340(a)(4) (2024) and 2 C.F.R. § 200.340(a)(2) (2021) do not allow terminations of awards based on new program goals or agency priorities that an agency identifies after granting the award." Mem. & Order 32 [Doc. No. 122].

On October 7, 2026, on the parties' Joint Motion for Final Judgment as to Count I Pursuant to Rule 54(b) [Doc. No. 140], the court entered a Rule 54(b) Final Judgment as to Count I [Doc. No. 142], declaring that: (1) Plaintiffs are entitled to declaratory relief; and (2) "2 C.F.R. § 200.340(a)(4) (2024) and 2 C.F.R. § 200.340(a)(2) (2021) do not allow terminations of awards based on new program goals or agency priorities that an agency identifies after granting the award." Id. at 1–2.[5]

---

Richardson), in his official capacity as Senior Official Performing the Duties of FEMA Administrator; the National Endowment for the Humanities; Michael McDonald, in his official capacity as Chairman of the National Endowment for the Humanities; the National Science Foundation ("NSF"); Brian Stone, in his official capacity as Chief of Staff performing the Duties of NSF Director; the U.S. Department of the Interior; and Doug Burgum, in his official capacity as Secretary of the Interior.

[4] The term "Termination Clause" as used herein refers both to 2 C.F.R. § 200.340 (as promulgated in 2020 and amended in 2024) and to the Defendant Agencies' parallel regulations. As modified in 2024, the Termination Clause states that a "Federal award may be terminated in part or its entirety . . . [b]y the Federal agency or pass-through entity pursuant to the terms and conditions of the Federal award, including, to the extent authorized by law, if an award no longer effectuates the program goals or agency priorities." 2 C.F.R. § 200.340(a)(4) (emphasis added).

[5] Plaintiffs promptly dismissed their remaining causes of action without prejudice. Notice of Voluntary Dismissal [Doc. No. 143].

Defendants appealed, see Notice of Appeal [Doc. No. 144], and have moved for a stay pending appeal of the court's judgment, Mot. [Doc. No. 145]. Defendants also seek "an administrative stay pending consideration of this motion." Id.

For the following reasons, Defendants' Motion [Doc. No. 145] is DENIED.

## I. Standard of Review

"[A]s part of its traditional equipment for the administration of justice, a federal court can stay the enforcement of a judgment pending the outcome of an appeal." Nken v. Holder, 556 U.S. 418, 421 (2009) (quoting Scripps-Howard Radio, Inc. v. FCC, 316 U.S 4, 9–10 (1942)). But "[a] stay is an 'intrusion into the ordinary processes of administration and judicial review …and accordingly 'is not a matter of right, even if irreparable injury might otherwise result to the appellant[.]'" Id. at 427 (citations omitted). The stay applicants "bear the burden of demonstrating that they are entitled to the 'extraordinary' relief that they seek." Rhode Island v. Trump, 155 F.4th 35, 41 (1st Cir. 2025) (quoting Somerville Pub. Schs. v. McMahon, 139 F.4th 63, 68 (1st Cir. 2025)).

In determining whether to grant a stay, courts consider the following factors: (1) whether the stay applicants have made a strong showing that they are likely to succeed on the merits on appeal; (2) whether the stay applicants will be irreparably injured absent a stay; (3) whether the issuance of a stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies. Nken, 556 U.S. at 426 (2009). Likelihood of success and irreparable injury are "the most critical" factors. Id. at 434. "It is not enough that the [movant's] chance of success on the merits be better than negligible." Id. (internal quotations and citation omitted). Similarly, "simply showing some possibility of irreparable injury fails to satisfy the second factor." Id. at 434–35 (internal quotations and citation omitted). Courts assess the harm to

other interested parties and weigh the public interest "[o]nce an applicant satisfies the first two factors[.]" Id. at 435.

## II. Discussion

### A. *Merits*

Defendants fail to make the "strong showing" that they are "likely to succeed on the merits," Nken, 556 U.S. at 426 (internal quotation and citation omitted), for the reasons set forth in the July 17, 2026 Memorandum and Order [Doc. No. 122], see id. at 8–32.

### B. *Irreparable Injury*

Defendants insist that they face "imminent irreparable harm" because the court's judgment impedes their ability to terminate grants that no longer advance the priorities of the "current Administration." Mem. ISO Mot. 12 [Doc. No. 146]. They further contend that the judgment "interferes with the Executive Branch's authority and ability to decide how to allocate federal funds," "inflict[ing] a severe separation-of-powers harm on the Executive Branch[.]" Id.

Crucially, the court only ordered limited declaratory relief, nothing more. Final J. as to Count I [Doc. No. 142]. The court's judgment does not enjoin Defendants from terminating grants for any lawful reasons, including terminating grants that fail to meet the program goals set forth when such grants were awarded. Final J. as to Count I [Doc. No. 142]. The judgment does not vacate the termination of grants that have already been terminated. See Mem. & Order 19 n.9 [Doc. No. 122] (noting Count II, "[i]n contrast" to Count I, "asks the court to . . . vacate any decision by Defendants interpreting the Termination Clause in this manner"). The judgment does not "enforce a contractual obligation to pay money." Dep't of Educ. v. California, 604 U.S. 650, 651 (2025) (internal quotation and citation omitted); Nat'l Insts. of Health v. American Pub. Health Ass'n, 606 U.S. __, 145 S. Ct. 2658, 2660 (2025) (internal quotation and citation

omitted). And it does not interfere with Defendants' ability to set new program goals and priorities for any new grants awarded.

Defendants argue that the executive branch will effectively have to continue to fund awards that do not match their new priorities and thereby lose "money that the government may never recover[.]" Mem. ISO Mot. 12 [Doc. No. 146] (emphasis added). But without offering any specifics as to what grants they want to terminate, such a representation is too "speculative" a statement to establish they "will be irreparably injured absent a stay[.]" New York v. Trump, 133 F.4th 51, 72 (1st Cir. 2025) (citation modified) (emphasis in original); see also Nken, 556 U.S. at 434–35 ("[S]imply showing some possibility of irreparable injury . . . fails to satisfy the second factor.") (citation modified).

C. *Substantial Injury to Plaintiffs*

The record before the court has repeatedly shown that "there is a substantial risk" Defendants would terminate grants absent declaratory relief. See Mem. & Order 9–10 [Doc. No. 122]. Defendants' contention that they face "imminent" irreparable harm if they are impeded from terminating grants that do not effectuate new priorities, Mem. ISO Mot. 12 [Doc. No. 146], underscores that the ongoing termination of grants is exactly what is at stake. Now that the merits have been determined by this court, Defendants offer little to show that Plaintiffs will not be substantially injured by a stay. Instead, they try to insist that Plaintiffs do not "have a cognizable interest in receiving federal funds to which they are not legally entitled[,]" that Plaintiffs could still "bring suit challenging that termination and seeking damages in the Court of Federal Claims[,]" and that "Plaintiffs . . . would suffer no comparable injury from a stay." Id. at 13. The very terms of these arguments point to their underlying weakness: a stay would injure Plaintiffs by allowing Defendants to terminate their grants unlawfully, have their current claims

mooted, and then be forced to seek relief elsewhere, see Nat'l Inst. of Health, 145 S. Ct. at 2661 (Barrett, J., concurring) (finding, preliminarily, that while challenges to the government's internal guidance belong in district court, challenges to the grant terminations once they have occurred belong in the Court of Federal Claims); and where Defendants' only "injury" is to abstain from conduct this court has found unlawful, it is the Defendants, not the Plaintiffs, that will suffer no comparable injury from a stay.

The court notes further that Federal Rule of Civil Procedure 57 specifically allows a court to "order a speedy hearing of a declaratory-judgment action." A stay would deprive Plaintiffs of the benefit of a declaratory judgment action, which is to "clarify legal rights and obligations before [parties] act[] upon them." Ernst & Young v. Depositors Economic Protection Corp., 443 F.3d 530, 534 (1st Cir. 1995); see also Mendez-Soto v. Rodriguez, 448 F.3d 12, 15 (1st Cir. 2006) ("A principal reason for deciding a case where compensation and coercive remedies . . . have no role is to provide guidance for the future.") (citing Step-Saver Data Sys., Inc. v. Wyse Tech., 912 F.2d 643, 649 (3d Cir. 1990) ("The idea behind the [Declaratory Judgment] Act was to clarify legal relationships so that plaintiffs (and possibly defendants) could make responsible decisions about the future."))).

D. *Public Interest and Other*

Where Defendants fail to establish one factor, and then "rely entirely" on the "same contentions . . . to satisfy the fourth Nken factor[, i.e.,] whether a stay would be in the public interest . . . [,] they have failed to satisfy their burden as to [the fourth] factor as well." New York, 133 F.4th at 73. Because Defendants effectively only argue that the public interest favors a stay by reference to their arguments to other factors, Mem. ISO Mot. 12 (citing Nken, 556 U.S. at 435, for the proposition that "the balance of the equities" and the "public interest" "merge in

cases involving the government"), the court finds Defendants have failed to establish the public interest weighs in favor of a stay.

As to other equitable considerations, the public interest is served by an orderly functioning of the government, including the requirement that Defendants respect the terms of grants that have been issued. The termination of awarded grants based on new priorities impacts the communities, scientific knowledge, and other beneficiaries of such grants; the individuals, communities, and institutions who were to be paid directly under such grants; and the vendors, landlords, and others with whom contracts have been entered to implement such grants. As such, a stay is contrary to the public interest.

The public interest is also served by a judiciary that has the authority to address the cases and controversies before it on the merits and in a timely manner. This court's decision will certainly not be the final word as to the merits of the dispute. Judgment was entered, albeit after some delay,[6] and an appeal has been filed. If Defendants have confidence that this court is wrong on the merits, Defendants could advance resolution of the dispute on the merits by seeking expedited review. Defendants, however, opt for the stay request, which seeks to avoid that merit-based determination. This tactic—focused primarily on moving targets of justiciability, loaded weighting of the equities, and otherwise avoiding a final resolution of the merits of the dispute—is aimed at allowing the government alone to continue engaging in conduct found unlawful by a lower court while litigation continues. But a special rule for stays for the government is not in the

[6] The record suggests that Defendants were responsible for the delay after the court issued its Memorandum and Decision [Doc. No. 122] on July 17, 2026. Per Plaintiffs' Declaration [Doc. No. 151], Defendants originally offered to draft a request for entry of a partial final judgment on August 12, 2026, Dirks Decl. ¶ 7; advised Plaintiffs two weeks later that they should instead create the first draft, id. ¶ 8; and then, upon receiving Plaintiffs' draft on September 10, 2026, id. ¶ 9, only returned proposed changes to Plaintiffs on October 1, 2026, id. ¶ 10.

public interest where it threatens respect for and confidence in the judiciary, which has sworn to "administer justice without respect to person[,]" 28 U.S.C. § 453.

E. *Entitlement to Relief*

Defendants have not shown they are likely to succeed on the merits. They have not made a specific or convincing showing of irreparable harm, adequately established Plaintiffs will not be injured, or effectively argued that a stay will be in the public interest. The court thus finds that Defendants fail to meet their burden to show circumstances that justify a stay. See Nken, 556 U.S. at 426.

The court reiterates that a stay "is not a matter of right," Virginian Ry. Co. v. United States, 272 U.S. 658, 672 (1926). It is "extraordinary relief[.]" Rhode Island, 155 F.4th at 47 (quoting New Jersey v. Trump, 131 F.4th 27, 34 (1st Cir. 2025). It represents an exceptional "intrusion" into normal judicial review, New York, 133 F.4th at 65 (citation modified). And it would be an unusual tool for a court to use against its own final judgment, which "creates a strong presumption of its own correctness," Virginian Ry. Co., 272 U.S. at 676.

**III. Conclusion**

For the foregoing reasons, Defendants' Motion [Doc. No. 145] is DENIED to the extent that it seeks a stay pending appeal and is DENIED as moot to the extent that it seeks an administrative stay while this motion was pending.

IT IS SO ORDERED.

November 3, 2026

/s/ Indira Talwani
United States District Judge